IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 06-352 |
| ) | |
| WILLIE ANDREW HAMPTON, ) | |
| ) | |
| Defendant. ) | |

## OPINION

Pending before the Court is Defendant's Motion to Suppress Evidence (Doc. #26). Defendant argues that two firearms and other items of proposed trial evidence must be suppressed because they were obtained as a result of 2 illegal searches and seizures. The first part of the hearing on the motion to suppress was held on February 1, 2007, and the second part of the hearing on the motion was held on April 10, 2007.

According to the Defendant, the first illegal search and seizure occurred when, on January 16, 2006 at 2210 hours (10:10 P.M.), a vehicle driven by Norman Collins, in which Defendant was the front-seat passenger, was pulled over by Officer Sean McGrail of the Clairton police force. The second illegal search and seizure allegedly occurred when during the traffic stop Defendant's person was searched, the result of which was that Defendant was found to be in possession of two firearms.

**I. Facts In Evidence.**

**A. The testimony of police officers Sean McGrail and Michael Merlino.**

Officer Sean McGrail testified at both the February 1, 2007 and April 10, 2007 hearings on Defendant's motion to suppress. Officer Michael Merlino testified at the February 1, 2007

hearing. The police officers testified to the following at the hearings.

Officer McGrail testified that he decided to pull over the vehicle in question because he had observed that the brake light on the passenger's side of the vehicle was not functioning. While he was following the vehicle, but prior to pulling it over, he ran the license plate on the vehicle and found out it was registered to Cash Auto Rental, located on Brownsville Road in Mt. Oliver, Pennsylvania. Fellow police officer Merlino testified that he and Officer Bonczek radioed Officer McGrail to find out his location so that they could back him up if he conducted a traffic stop.

Once the vehicle was stopped, Officer McGrail was joined by Officers Merlino and Bonczek, and the three officers approached the stopped vehicle, with Officer McGrail approaching the driver's side. Officer McGrail informed the driver, Norman Collins, that he had been stopped because his brake light was not functioning. Officer McGrail asked Collins and Defendant, who was sitting in the front passenger seat of the vehicle, for driver's licenses. Both gentlemen gave Officer McGrail their licenses.

Officer McGrail then checked on Collin's license and found out that it was valid, but suspended. Officer Bonczek checked on Defendant's license and found out that Defendant's license had been expired since 1991. At that point, it was decided that because no one could drive the vehicle, it would have to be towed.

Officer McGrail returned to the stopped vehicle and informed Collins that the vehicle would have to be towed. Officer McGrail asked Collins to step out of the vehicle. At that time, Defendant attempted to exit the vehicle as well and began to open his door. Officer Merlino, who had been standing on the passenger side of the vehicle, closed the door and told Defendant to stay inside the car. The Defendant again tried to exit the vehicle and Officer Merlino again told

Defendant to stay inside the vehicle. The Defendant eventually succeeded in exiting the vehicle and pushed past Officer Merlino. Officer Merlino grabbed Defendant by the arm in an attempt to detain him. He could not get Defendant under control. Eventually Officers Bonczek and McGrail got involved in the struggle and the three officers together were able to subdue and arrest Defendant.

During the struggle, Officer Merlino had felt a weapon in the Defendant's coat pocket. Once Defendant was handcuffed and arrested, Officer Merlino cut a weapon out of the Defendant's coat pocket with a knife. It was a Sig Sauer 9mm pistol. Officer Merlino then asked Defendant if he had anything else on him; Defendant motioned to another pocket and said "in there." The pocket which Defendant referenced contained a weapon. It was a HiPoint C9 9mm pistol. Both of the weapons were semi-automatic and were fully loaded, with rounds in the chambers. Defendant also was found to be wearing a bullet-proof vest.

After Defendant was placed in the car, Officer McGrail and Collins had a further conversation about the reason why Collins was stopped. According to McGrail, he did this as a courtesy because Collins seemed confused about why his license had been suspended. During this conversation, Officer McGrail called in to the dispatcher and let Collins listen to her answer that Collins had a suspended drivers license. Additionally, Officer McGrail, either by pushing on the vehicle's brake himself or having one of the other officers assist him, showed Collins that the rear passenger brake light was not functioning.

**B. Norman Collins' testimony.**

Norman Collins was the driver of the van that was pulled over by Officer McGrail on January 16, 2006. Norman Collins testified to the following at the April 10, 2007 hearing. Collins knew who the Defendant was, but did not know the Defendant by name. Collins picked

up the Defendant on Park Avenue in Clairton and was going to drive him to the Terraces, also in Clairton, as a favor. They never arrived at their destination because Collins was pulled over by Officer McGrail on Desiderio Road in Clairton.

Officer McGrail, who was in a marked police car, began following Collins's van on Park Avenue and followed him for a while before stopping him on Desiderio Road. Upon pulling Collins over, Officer McGrail approached Collins, told him that he was stopped because of a malfunctioning brake light, and asked Collins for his driver's license. Officer McGrail took the driver's license back to the police car. Upon returning, Officer McGrail told Collins that his license was suspended and asked Collins to get out of the car and go to the back of the vehicle. Collins complied and went to the back of his car. Collins was at the back of the car when he heard a scuffle taking place between the Defendant and the police officers. During this time Collins also heard one of the police officers state that the Defendant had a weapon. After the Defendant was subdued and arrested, Collins was patted down. Officer McGrail then told Collins that he could leave. Collins asked for the keys to the vehicle and was told no because of his suspended drivers license. According to Collins, none of the police officers present demonstrated to him that the van's rear brake light was not working.

Collins had rented the van from Cash Auto Rental for about 2 weeks before the stop in question. He was paying approximately $80 per week to rent the van and he went to the car rental agency in person every Friday to make his payment. When Collins would go to the car rental agency on Fridays, someone from the agency would check the car over; there was never any problem with the rear brake lights. The last time Collins had been at the agency prior to the stop on January 16, 2006, was January 13, 2006.

4

According to records introduced by the Government at the April 10, 2007 hearing, Collins got a ticket for going through a stop sign in September, 2005. He failed to pay the fine. As a result, his license was suspended on December 27, 2005, and a notice of the suspension was sent out to him on January 6, 2006. Collins claims to be unaware of the suspension when his vehicle was stopped on January 16, 2006, some ten days after the notice of suspension had been sent out.

Collins got his drivers license reinstated within a day or two after the traffic stop. Upon getting it reinstated, the car rental agency brought the van back to Collins. Collins asked if the rear brake light was working. He was told that the rear brake light was not faulty, that it was working. Ultimately, Collins rented the van for one month; during that time period, he did not notice any problem with the brake lights.

### C. Gary McDonough's testimony.

Gary McDonough testified at the February 1, 2007 hearing. McDonough testified to the following. The vehicle Collins was driving was a rental vehicle owned by Cash Auto Rental; McDonough is part owner of the business. After the vehicle had been impounded, McDonough, as well as a mechanic, went to pick up the vehicle from the tow pound. Mr. McDonough testified that during the course of driving the vehicle home, both he and the mechanic observed that the rear passenger brake light was functioning normally. McDonough further testified that a brake light might not function and thereafter function properly because of faulty wiring.

## II. Legal Analysis.

Defendant argues that the first illegal search and seizure occurred when the vehicle driven by Collins was pulled over by Officer McGrail. In United States v. Delfin-Colina, 464 F.3d 392 (3d Cir. 2006), the appellate court recently discussed the law relevant to investigatory traffic

5

stops. The Delfin-Colina court first explained that "[t]he Fourth Amendment protects individuals 'against unreasonable searches and seizures.' A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" Id. at 396 (internal quotations and citations omitted).

The Delfin-Colina court then went on to explain that "[u]nder Terry [v. Ohio, 392 U.S. 1 (1968)] and subsequent cases, 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence,' and only a 'minimal level of objective justification' is necessary for a Terry stop." Id. (internal quotations and citation omitted).

The Delfin-Colina court then went on to examine the impact of the United States Supreme Court's decision in Whren v. United States, 517 U.S. 806 (1996) on the continued viability of the reasonable suspicion standard to routine traffic stops. Id. at 397-97. Ultimately, the court affirmed its position "that the Terry reasonable suspicion standard applies to routine traffic stops." Id. at 397.

After so holding, the Delfin-Colina court went on to emphasize that: "[t]hough reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing the 'specific, articulable facts' to justify a reasonable suspicion to believe that an individual has violated the traffic laws. And a reviewing court must consider whether the 'rational interferences from those facts reasonably warrant [the] intrusion.' Ultimately, our mandate is to weigh 'the totality of the circumstances-the whole picture.'" Id. (internal quotations and citation omitted).

6

The court then stated that "[t]he Whren Court explained that a court should undertake an objective review of the officer's rationale for the investigatory traffic stop. That is, a court should only look to whether specific, articulable facts produced by the officer would support reasonable suspicion of a traffic infraction." Id. at 397-98.

Ultimately, the Delfin-Colina court concluded that "[t]aken together, then, Terry and Whren stand for the proposition that a traffic stop will be deemed a reasonable "seizure" when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. In other words, an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." Id. at 398.

Applying the above-stated law to the facts of this case, Officer McGrail testified that he stopped the vehicle driven by Mr. Collins because he observed that the vehicle's passenger-side brake light was not working. 75 Pa.C.S.A. §4303(b) provides in relevant part that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system, including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department." We find Officer McGrail's testimony explaining why he stopped the vehicle to be credible. Notably, McDonough, a man who knows vehicles, testified that a brake light might not function and thereafter function properly because of faulty wiring. The Court finds not credible Collin's testimony that none of the police officers present showed him that the rear brake light was functioning properly. As such, an objective review of the facts shows that Officer McGrail possessed specific, articulable facts that the operator of the vehicle was violating a traffic law at the time of the stop. Therefore, the investigatory stop of Mr.

7

Collin's vehicle was legal and not a violation of the Defendant's Fourth Amendment rights.

Separate and apart from the stop of the vehicle, Defendant argues that the search of his person, the result of which was that Defendant was found to be in possession of two firearms, was a violation of his Fourth Amendment rights. In United States v. Moorefield, 111 F.3d 10 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held that it is lawful for a police officer to order a passenger of a legally stopped vehicle to remain in the car with his hands in the air. Id. at 13. Accordingly, the police officers had every right to order Defendant to stay in the vehicle. Moreover, "[a]fter a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop, and detain the vehicle and its occupants for further investigation." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003). Here, Defendant's refusal to remain in the vehicle and his attempt to flee the scene, certainly gave the officers a reasonable and articulable suspicion of illegal activity sufficient to detain Defendant from leaving the scene and further investigate why he had attempted to flee. Furthermore, given Officer Merlino's observation during the struggle that Defendant had a weapon in his possession, the officers were acting properly when they searched the Defendant for weapons. See Terry, 392 U.S. at 27 (Court concluded that police officer can conduct a search for weapons on a person where a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger and that in determining whether the officer acted reasonably in such circumstances, court must look to the specific reasonable inferences which the police officer is entitled to draw from the facts in light of his experience). See also id. at 21 ("in justifying the particular intrusion the police officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably

warrant the intrusion."). Accordingly, the police officers' search of Defendant's person did not violate the Fourth Amendment rights of the Defendant

## III. Conclusion.

Based on our findings regarding the credibility of the witnesses to this incident, we find that the traffic stop of the Collins vehicle was reasonable and the events thereafter, which led to the search and arrest of the Defendant, did not violate the Fourth Amendment rights of the Defendant. Defendant's Motion to Suppress Evidence (Doc. #26) is denied. An appropriate Order follows.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge

April 12, 2007